WESTERN FEDERAL SAVINGS & LOAN ASSOCIATION, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Western Federal Sav. & Loan Asso. v. Commissioner
Docket No. 5993-83.
United States Tax Court
T.C. Memo 1988-107; 1988 Tax Ct. Memo LEXIS 135; 55 T.C.M. (CCH) 372; T.C.M. (RIA) 88107; March 10, 1988. Robert Schell and Keith G. Engel, for the petitioner. Bruce W. Baker, for the respondent. HAMBLEN
MEMORANDUM FINDINGS OF FACT AND OPINION HAMBLIN, Judge: Respondent determined a deficiency of $ 3,496 *136 in petitioner's Federal income tax for the taxable year ending September 30, 1980. The sole issue for our determination is whether a stock dividend received by petitioner in 1979 from the Federal Home Loan Bank of Des Moines is taxable to petitioner under section 305(b) (1). [1]
FINDINGS OF FACT Some of the facts are stipulated and are found accordingly. The stipulation of facts and attached exhibits are incorporated herein by this reference. Petitioner is an Iowa Savings and Loan Association which operates as a mutual savings institution under the provisions of the Iowa Code. Petitioner's principal corporate office was in Council Bluffs, Iowa, when its petition was filed in this case. Petitioner timely filed its U.S. Corporation Income Tax Return, Form 1120, for its taxable year ending September 30, 1980. At all times since its inception, petitioner has been a member and stockholder of the Federal Home Loan Bank of Des Moines (hereinafter the "Des Moines District Bank" or *137 "District Bank"). The Des Moines District Bank is one of 12 district banks established pursuant to the Federal Home Loan Bank Act of 1932, 47 Stat. 725, 12 U.S.C. sec. 1421 et seq. (1961). The district banks were capitalized with stock subscriptions from member institutions and the U.S. Treasury. District banks operate under the supervision of the Federal Home Loan Bank Board, an administrative agency in the Executive Branch of the Federal Government. [2]
As a member and stockholder in a district bank, savings and loan associations such as petitioner are required by Federal law to maintain a certain capital stock ownership in the respective district banks of which they are members. At the end of each calendar year, the stock ownership requirements are calculated with reference to each member bank's net home mortgage loans outstanding and total borrowings of each member from the district bank. Each member bank generally must maintain a capital stock ownership interest in the district bank *138 in an amount equal to at least one percent of the total outstanding balance of its home mortgage loans and at least equal to one-twentieth of total outstanding borrowings of the member bank from the district bank as of December 31 of each year. Each share of stock in the district banks is valued by statute at $ 100 par value. See 12 U.S.C. sec. 1426(b) and (c) (1978). Based upon the above year end calculations, member banks that are required to purchase additional stock of district banks must do so by January 31 of the following year at the par value of $ 100 per share. Member banks that own stock in district banks in excess of the required number of shares (excess shares) may request that excess shares by redeemed by the district banks. The Des Moines District Bank's territory, the Eighth District, includes the states of Iowa, Minnesota, Missouri, North Dakota and South Dakota. After April 1, 1979, the Des Moines District Bank did not issue stock certificates to a member bank each time a member increased or decreased its holdings of District Bank stock. Instead of issuing stock certificates, the Des Moines District Bank treated purchases of additional *139 shares and redemptions or sales of existing shares as accounting entries on the books and records of the District Bank and its member banks in the following manner. The District Bank maintained a stock account for each member bank which showed the total dollar value of Bank shares owned by the member bank. [3] Purchases and redemptions or sales by member banks of District Bank stock were shown as debits and credits on the account books. As a result, the District Bank could determine the number of Bank shares owned by any member and the number of shares purchased and sold or redeemed from each member for each year. Similarly, petitioner maintained an account showing the total dollar value of its District Bank shares and its purchase and sales or redemptions of District Bank stock during each year. Prior to December 31, 1979, petitioner owned 1,852 shares of District Bank stock which it had purchased over the years from the District Bank at $ 100 per share. *140 On October 2, 1979, Dean R. Pritchett, president of the Des Moines District Bank, notified all Eighth District Bank members that the District Bank intended to issue a capital stock dividend instead of a cash dividend for the year 1979. In his notification bulletin to member banks, Pritchett stated: The Board of Directors of the Federal Home Loan Bank of Des Moines has decided that the dividend on capital stock for the year 1979 will be distributed in the form of additional capital stock rather than in cash as in past years. The Board of Directors felt it would be in the best interest of Eighth District members to have the dividend paid in the form of stock because of possible income tax advantage. Neither the Federal Home Loan Bank Board nor this Bank, however, can express an opinion as to the effect of this form of dividend. Each member should consult its own tax counsel as to the inclusion, or exclusion, of this distribution for tax purposes. The stock dividend will be credited to your capital stock account on December 31, 1979, with any fractional amount being credited as cash to your demand deposit account. The stock you receive will, of course be subject to the usual *141 requirements governing the ownership and redemption of capital stock by members. The dividend rate will be announced at a later date and the actual amount of your dividend will be indicated at that time * * * [Emphasis supplied.] On December 14, 1979, the Board of Directors of the Des Moines District Bank Considered and passed a resolution authorizing a declaration of accrued dividends on capital stock for the calendar year 1979 at the rate of 9.375 percent. In relation to the dividend declaration, the Board of Directors considered the implications of the relaxation of the Federal Home Loan Bank Board's dividend policy and the resulting higher rate of dividend: It was concluded that compliance with the [Federal Home Loan Bank Board's] policy in future years would be difficult if the level of advances remained stable or increased, and that steps should be taken to increase income and reduce expense where possible. It was suggested that the payment of the dividend with capital stock would result in increased earnings and reduced expenses. Since each member must normally purchase additional stock each year because of the growth in home mortgage loans, and since the Bank *142 cannot bill for this stock until after the annual reports are filed (due January 31 each year), the money from these sales is not received until February or later and there is a resulting loss of investment earnings for a period of six to eight weeks. The stock dividend would permit the use of those funds. The estimated dividend is $ 27,900,000. That sum invested in the expected January market would provide income to the Bank in the approximate amount of $ 310,000. There would also be a cost saving since the Bank would not have the expense of billing and recording additional stock purchases.
After discussion, the Board of Directors passed a resolution to provide that the dividend declared would be paid in capital stock on the basis of one share of stock for each $ 100 dividend entitlement, with fractional shares to be paid in cash. [4]
Finally, the Board of Directors considered whether the District Bank should permit the sale of excess stock by member banks back to the District Bank: The President advised that with the declaration of a stock dividend, and *143 the larger than normal rate of dividend, some members might find that they hold more stock than is required by the Federal Home Loan Bank Act, and request the repurchase of excess stock. He pointed out that Section 6(c) of the Act permits the Bank to redeem stock within specific limitations. * * * After a full discussion, the Board determined that the Bank is adequately capitalized, and that there would be no purpose in keeping stock in excess of statutory requirements. The Board further found that authority should be delegated to the officers to repurchase excess stock providing the following criteria are met:
-- The member makes a formal request to have the Bank repurchase excess stock. -- The officers are satisfied that there is stock in excess of the requirements set forth in Section 6(c) of the Act. -- The member has adequate collateral to cover outstanding advances, after deducting the repurchased stock. [Emphasis supplied.]
Consequently, the Board of Directors of the Des Moines District Bank passed a resolution authorizing officers to repurchase excess stock held by member banks after a determination that the three criteria cited above were satisfied. *144 On December 20, 1979, the Federal Home Loan Bank Board approved the Des Moines District Bank stock dividend for the year 1979. On December 31, 1979, the Des Moines District Bank issued the stock dividend by (a) adding the appropriate dollar value of whole shares to each member's stock account, and (b) adding the appropriate amount of cash for fractional shares to every member's demand deposit account. The District Bank distributed 278,843 shares to its 269 member banks. The total value of the 278,843 shares was $ 27,884,300. Petitioner received a stock dividend of 172 shares or a dollar value of $ 17,200 and $ 51.50 in cash for fractional shares. [5]
As of December 31, 1979, the principal amount of petitioner's outstanding loans to borrowers necessitated that petitioner increase its holdings in District Bank stock from 1,852 shares to 2,124 pursuant to 12 U.S.C. 1426(c). Accordingly, *145 on December 31, 1979, petitioner purchased 100 additional shares of District Bank stock at $ 100 per share. Petitioner satisfied its stock holding requirement under 12 U.S.C. 1426(c) through its December 31, 1979 purchase of 100 shares of District Bank stock and its receipt of the District Bank's stock dividend of the same date. A number of the District Bank's 269 members owned sufficient shares prior to their receipt of the 1979 stock dividend to meet their legal stock ownership requirements under 12 U.S.C. 1426(c). Of those members who did own sufficient shares prior to the 1979 stock dividend, a number of members requested redemptions of all their excess shares. Petitioner did not request redemption of any of its shares of District Bank stock in 1980. During 1980, the Des Moines District Bank honored all redemption requests. The District Bank redeemed excess shares at par value, or $ 100 per share. Where a member bank has met all requirements for distribution, the District Bank has never refused to redeem any District Bank stock held by member banks. The stock dividend issued by the Des Moines District Bank on December 31, 1979 was *146 the first stock dividend ever issued by the Bank. Since that time, the Des Moines District Bank has not issued any additional stock dividends. On its timely filed U.S. Corporation Income Tax Return (Form 1120) for taxable year ending September 30, 1980, petitioner noted the $ 17,200 stock dividend as "Income on Books Not Included in Return. [6]
OPINION The sole issue before us is whether the stock dividend received by petitioner in 1979 from the Des Moines District Bank is taxable to petitioner under section 305(b)(1). Respondent asserts that the stock dividend is taxable to petitioner because at least one shareholder of the Des Moines District Bank had an election to receive either stock or property within the meaning of section 305(b)(1). While respondent concedes that the District Bank stock was not immediately redeemable, respondent posits that an election to redeem may arise from the circumstances of distribution. Sec. 1.305-2(a)(4), Income Tax Regs. *147 As all requests for redemption were honored in full by the District Bank, respondent asserts that a de facto election to receive stock or cash existed in this case.
On the other hand, petitioner contends that the District Bank at all times retained its discretion as to whether to redeem District Bank shares from member banks. As such, petitioner contends that section 305(b)(1) is inapplicable as no stockholder had a cash-or-stock option under the facts of this case. In general, a stockholder is not taxed on the value of a common stock dividend declared by a corporation on its own shares. Sec. 305(a). Where, however, dividends from a corporation are payable, at the election of the stockholders, in stock or property (such as cash), the receipt of the dividends will be taxable to the stockholders under the provisions of section 301. Sec. 305(b)(1). [7] In that circumstance, the receipt of stock dividends will be taxable under sections 305(b)(1) and 301 regardless of whether the stockholders exercise their election to receive the dividends in cash or other property. Sec. 1.305-2(a), Income Tax Regs.[8]
*148 Respondent contends that, by redeeming all District Bank stock it was requested to redeem from its member banks in 1980, the Des Moines District Bank established a policy and practice of redeeming excess stock upon request of member banks such that the member banks should be regarded as having an "election" to receive the 1979 stock dividend in cash. Therefore, respondent determines that the stock dividends in question should be taxable to the member banks under sections 305(b)(1) and 301. For the following reasons, we disagree. This Court has recently considered this very issue in Frontier Savings Association v. Commissioner,87 T.C. 665 (1986), (court-reviewed), on appeal (7th Cir., March 24, 1987). In Frontier Savings, supra at 675, we stated as follows: The Federal statute under which the Federal Home Loan Bank Board and the district banks regulate certain activities of member banks addresses the authority of district banks to redeem common stock from its member banks and explicitly describes that authority as discretionary with each district bank. *149 Section 1426(c) of the Federal Home Loan Bank Act as amended in 1961 provides, in relevant part, as follows: If the bank finds that the investment of any member in stock is greater than that required under this subsection it may, unless prohibited by said Board [i.e., the Federal Home Loan Bank Board] or by the provisions of paragraph (2) of this subsection, in its discretion and upon application of such member retire the stock of such member in excess of the amount so required * * * [12 U.S.C. sec. 1426(c)(1961), as amended by Act of Sept. 8, 1961, subsec. (c), Pub. L. 87-210, 75 Stat. 482. Emphasis supplied.] After a comparison with the original language of section 1426(c) of the Federal Home Loan Bank Act of 1932, [9] we found in Frontier Savings that nothing in the Federal Home Loan Bank Act, in its present form, suggests that since 1961 anyone other than the district banks and the Federal Home Loan Bank Board have the authority to determine whether excess shares will be redeemed. Frontier Savings Association v. Commissioner, supra at 676. *150 After a careful review of the record in this case, we find that the Des Moines District Bank retained at all times the complete discretion as to whether or not it would redeem any District bank shares tendered to it by member banks. As highlighted by the formal actions of the Des Moines District Bank's Board of Directors, Congress vested in the district banks and in the Federal Home Loan Bank Board the discretionary authority to redeem excess shares of common stock held by member banks. Nothing in the record suggests that the Des Moines District Bank necessarily would grant any or all requested redemptions. We are satisfied that the manner in which stock dividends were paid and redeemed in 1979 and 1980 by the Des Moines District Bank was consistent with that discretionary authority. Further, we note that the distribution occurred on December 31, 1979. The determination of the amount of shares required to be owned by a member bank is based on the member bank's loan balance at the end of the calendar year. 12 U.S.C. sec. 1426 (c). As a practical matter, the computation of the exact required balance cannot be completed until January of the following year. *151 As a result, on the day of the distribution of the stock dividends, member banks could not know (other than through estimates or projections) whether they would be required to retain the stock dividends they received as part of their required investments in the District Bank or whether the stock dividends would qualify as excess shares. See Frontier Savings Association v. Commissioner, supra at 677. Based on the record before us, we conclude that the Eighth District member banks, including petitioner, did not have the option or election to have the Des Moines District Bank redeem excess shares of District Bank stock. As such, section 305(b)(1) is not applicable. Thus, the stock dividend is not taxable to petitioner. Sec. 305(a). Finally, we note that the rules of section 305 are broad. After a careful examination, we have determined that the facts of this case fall under the scope of Frontier Savings Association v. Commissioner, supra. Furthermore, the stock dividend issued by the Des Moines District Bank was the first and only stock dividend ever issued by the District Bank. Since that time, the Des Moines District Bank has not issued any *152 additional stock dividends. However, we note that, under different factual circumstances, a discretionary act of the board of directors of a shareholder corporation to redeem stock dividends might constitute an "option" that arises after the distribution or a distribution pursuant to a "plan." See secs. 1.305-2(a) and 1.305-3(b), Income Tax Regs. See also Frontier Savings Association v. Commissioner, supra at 679. (Hamblen, J., concurring). In light of the resolution of this issue, it is not necessary to address certain alternative arguments of both parties. [10]
To reflect the foregoing, Decision will be entered for the petitioner.
Footnotes
1. All section references are to the Internal Revenue Code of 1954, as amended and in effect during the year at issue. All rule references are to the Tax Court Rules of Practice and Procedure. ↩
2. The Federal Home Loan Bank Board also is the chartering and regulatory authority for Federal savings and loan associations and Federal mutual savings banks. ↩
3. The District Bank recorded each member bank's holdings of District Bank stock on a dollar basis, rather than a share basis. For example, if a member bank owned 500 shares of District Bank stock, the District Bank's records would reflect stock ownership of $ 50,000.00. (500 x $ 100 par value per share) ↩
4. The Board of Directors also passed a resolution providing an allocation to the dividend stablization reserve. ↩
5. Petitioner's receipt of $ 51.50 in cash for fractional shares is not at issue in this case. However, we note that cash payment for fractional shares does not normally invoke the operation of sec. 305(b). Sec. 1.305-3(c)(1), Income Tax Regs.↩
6. On its balance sheet statement included in Form 1120, petitioner listed its District Bank stock with a beginning balance of $ 185,200 and an ending balance of $ 212,400. We note that the ending balance should be $ 202,400. ↩
7. Secs. 305(a) and (b)(1) provide: (a) GENERAL RULE. -- Except as otherwise provided in this section, gross income does not include the amount of any distribution of the stock of a corporation made by such corporation to its shareholders with request to its stock. (b) EXCEPTIONS. -- Subsection (a) shall not apply to a distribution by a corporation of its stock, and the distribution shall be treated as a distribution of property to which section 301 applies -- (1) DISTRIBUTIONS IN LIEU OF MONEY. -- If the distribution is, at the election of any of the shareholders (whether exercised before or after the declaration thereof), payable either -- (A) in its stock, or (B) in property. ↩
8. Sec. 1.305-2(a), Income Tax Regs., states, in pertinent part:
Distributions in lieu of money. (a) In general. Under section 305(b)(1), if any shareholder has the right to an election or option with respect to whether a distribution shall be made either in money or any other property, or in stock or rights to acquire stock of the distributing corporation, then, with respect to all shareholders, the distribution of stock or rights to acquire stock is treated as a distribution of property to which section 301 applies regardless of -- (1) Whether the distribution is actually made in whole or in part in stock or in stock rights; (2) Whether the election or option is exercised or exercisable before or after the declaration of the distribution; (3) Whether the declaration of the distribution provides that the distribution will be made in one medium unless the shareholder specifically requests payment in the other; (4) Whether the election governing the nature of the distribution is provided in the declaration of the distribution or in the corporate charter or arises from the circumstances of the distribution; or (5) Whether all or part of the shareholders have the election. ↩
9. As originally enacted, section 1426(c) of the Federal Home Loan Bank Act of 1932, supra, provided as follows: If the board finds that the investment of any member in stock is greater than than required under this section, upon application of such member, the bank shall pay such member for each share of stock in excess of the amount so required an amount equal to the value of such stock * * * [Federal Home Loan Bank Act of 1932, supra,sec. 1426(c). Emphasis supplied.] In Frontier Savings, we noted that the use of the mandatory "shall" in this original language suggested that, prior to the 1961 Amendment, member banks may have had the right to require district banks to redeem excess shares. Frontier Savings Association v. Commissioner,87 T.C. 665, 676↩ (1986) (Court-reviewed), on appeal (7th Cir., Mar. 24, 1987)." 10. Respondent refers to Rev. Rul. 76-258, 1976-2 C.B. 95, and Rev. Rul. 83-68, 1983-1 C.B. 75. Revenue Rulings are not binding on this Court. Estate of Lang v. Commissioner,64 T.C. 404, 406-407 (1975), affd. 613 F.2d 770 (9th Cir. 1980). Furthermore, in Frontier Savings Association v. Commissioner, supra at 678, we explicitly rejected the conclusion reached in Rev. Rul. 83-68↩.